OPINION
James R. Taylor, Sr. is appealing from the decision of the Common Pleas Court of Montgomery County, Ohio, Division of Domestic Relations, which awarded virtually all of the assets owned by him to his ex-wife, Patricia A. Taylor (hereinafter the parties for the sake of clarity will be referred to by their first names) as part of a final judgment and decree of divorce. James was not present at the hearing because he was then incarcerated in Greene County jail, having been found guilty by a jury of two counts of aggravated murder and one count of attempted murder, the latter being his attempt to kill Patricia. He has subsequently received the death sentence on his aggravated murder convictions.
The sole assignment of error on appeal is that:
 1. THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING THE DEFENDANT ALL OF THE PARTIES' MARITAL ASSETS.
At the close of the hearing, Patricia testified as to the history of their marriage of forty-seven years, which included a lengthy period of physical and mental abuse of her by James, which was corroborated by testimony of her daughter-in-law. She also testified that she was then residing with her son and daughter-in-law in Florida because "I have nowhere else to go." Tr. 13. Her further financial circumstances and the trial court's rationale for awarding virtually all[1] assets are set forth in the following relevant portion of the trial court's decision on the issue (James is the plaintiff and Patricia is the defendant):
 The court finds from the evidence, that the Plaintiff has been found guilty of two counts of aggravated murder in the first degree and one count of aggravated murder by a jury in the Greene County Common Pleas Court, Criminal Division. At the time of the hearing the Plaintiff was awaiting his sentence on these convictions. The court further finds that prior to the Plaintiff being arrested on the charges, he was a full-time employee with the General Motors Corporation and according to his sworn Affidavit of Income and Expense form was earning $70,000.00 per year. The court further notes from the evidence that after the Plaintiff was arrested on the charges, he lost his $70,000.00 per year job. The court further notes from the evidence that the Defendant at the time was unemployed and had been unemployed for a period of over thirty years. Further, the court finds as result of the Plaintiff's conduct the Defendant was unable to make the mortgage payments on the parties' marital home and had to sell the parties' marital home. Further, the court finds that because of the Plaintiff's conduct the Defendant lost her health insurance and according to her testimony it would cost her approximately $400-$500 per month to acquire new health insurance. Further, the court finds that because of the Plaintiff's conduct that the Defendant has had to relocate from her marital home and is now presently living with her son in Florida. Further, from the evidence the court finds that the Defendant's sole source of income is social security benefits in the amount of $605.00 per month. The Court also notes that pursuant to Exhibit "F", which was stipulated to by both parties counsel of record, that the Plaintiff has estimated social security benefits of approximately $1,300.00 per month but as of yet he has not applied for the social security benefits.
 In rendering this decision, the court specifically finds that the Plaintiff's conduct, causing the loss of his job, and because of his present incarceration, the court should not make an equitable [sic-equal] division of the parties' marital assets. The court specifically finds that the Plaintiff's conduct has caused grave financial circumstances for the Defendant and has put her in severe financial harm. The court notes that typically in a case before this court where one spouse is earning approximately $70,000.00 per year and the other spouse is earning $0.00 that the court would make a significant award of spousal support. The court further notes from the evidence that the Defendant is presently unemployed, is 64 years old, has limited eyesight, cannot drive an automobile, does not have a present driver's license, only has an eight [sic] grade education, does not have a GED or the equivalent of a high school diploma, and has very little means to support herself. Based upon all the foregoing, including the Plaintiff's conduct, the court hereby specifically awards all of the parties' marital assets to the Defendant.
Record 52.
The award included the proceeds of the sale of the marital residence, all of James' retirement benefits from General Motors, two automobiles, and whatever household furnishings were left. The court specifically retained jurisdiction over the issue of spousal support if the court deems it necessary for Patricia in the future. Presumably, the source of any such spousal support would be at least part of James' social security payments of approximately $1,300.00 per month, if he ever applies for them. Plaintiff's counsel on appeal, however, has pointed out that a person in James' situation is not entitled to any monthly social security benefits, citing 42 U.S.C. § 402 (X)(1)(A)(i) and42 U.S.C. § 423(I), in arguing that it was an abuse of discretion for the trial judge to award virtually everything to Patricia.
Both counsel on appeal recognize that the law in Ohio is that upon a division of property in a divorce action, there is no presumption that it be divided equally, and the trial court has broad discretion in determining an equitable property division. As the Supreme Court of Ohio noted in Cherry v. Cherry (1981),66 Ohio St.2d 348, 20 O.O.3d 318: "A court of common pleas has broad discretion to determine what property division is equitable in a divorce proceeding. The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion." Syllabus 2. The Supreme Court noted that a potentially equal division should be the starting point of the trial court's analysis before it considers the statutory factors listed (now) in R.C. 3105.171(C)(1). The same code section lists eight specific factors the trial court should consider and, significantly, "any other factor that the court expressly finds to be relevant and equitable." Id. (F)(9). In a portion of the trial court's opinion not quoted above, the court specifically noted that it examined all the statutory factors and cited Cherry,supra.
The trial court also cited Leadingham v. Leadingham (1997),120 Ohio App.3d 496 as authority for awarding substantially more to the wife than to the husband when the husband by his criminal misconduct reduced the means of support for his wife. Further support for an unequal division of marital property when the husband has committed a criminal act, is incarcerated, and has, therefore, substantially reduced the total amount of assets available to support his wife, are found in a decision of the Eleventh District Court of Appeals in Dragojevic-Wiczen v. Wiczen
(1995), 101 Ohio App.3d 152, and that of the First District Court of Appeals in Nye v. Nye (June 25, 1997), Hamilton App. No. C-960461, unreported. The court in Wiczen stated: "Implicit in the trial court's property division was a conclusion that appellant's criminal conviction and resulting incarceration rendered an equal division of marital property inequitable. In light of the discretion afforded the trial court in such a situation, we cannot say that the trial court's division of marital property constituted an abuse of discretion." Supra, 156.
There was nothing implicit in the rationale of the trial court's division of marital property in the case before it. The court made it clearly explicit that James' heinous criminal behavior caused the subsequent loss of his employment, his incarceration for the remainder of his life or until his execution, and serious financial consequences for Patricia. The trial court here acted within its broad discretion, and we cannot say its judgment is an abuse of its discretion. In fact, we believe that its award was clearly justified by the circumstances.
The sole assignment of error is overruled, and the judgment is affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Harry G. Beyoglides, Jr.
Keith R. Kearney
Hon. Charles A. Lowman
[1] The court set aside some of James' money to pay for his attorney fees at the trial and on appeal. He was represented by counsel at the hearing.